IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS FIELD ALSTON, III, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-22-3070 |
| CHIEF OF SECURITY, *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM ORDER**

Plaintiff Thomas Field Alston, III, who is incarcerated at North Branch Correctional Institution ("NBCI"), filed this civil action pursuant to 42 U.S.C. § 1983. Alston filed a motion to proceed in forma pauperis (ECF 2), which is granted due to his indigency. On January 26, 2023, this Court notified Alston that his complaint was subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim and failure to name proper defendants. ECF 7. Alston filed an amended complaint (ECF 8), which the Court now screens for sufficiency. Because the amended complaint fails to state a claim, it is dismissed.

**I. Alston's Allegations**

Alston alleges two violations of his constitutional rights by "warden," "assistant warden," "chaplain," "chief of security," and unnamed correctional officers. ECF 8, at 1, 7. First, he claims that, as a pretrial detainee, he was transferred to a DOC facility to serve 60 days for a rules violation and then detained there for four months, which he insists was "wrongful excessive confinement." *Id.* at 3. Second, he claims the defendants violated his right to free exercise of religion under the First Amendment because he could not practice his religion, the chaplain discriminated against Buddhism, and he did not have access to a religious advisor for "private consultation." *Id.* at 2. Third, he claims that, while he was in DOC custody, the conditions of his confinement constituted

cruel and unusual punishment in violation of the Eighth Amendment.  *Id*. at 2–3.  More specifically, his toilet leak was not fixed, even though he asked various corrections officers to put his toilet on a list to be repaired, and the leak caused unsanitary conditions in his cell.  *Id*. at 3.  Additionally, he alleges that the facility is extremely cold and "the light is so bright you can't recognize night from day."  *Id.*  Finally, he alleges that while he was on segregation, he was made to wear "belly chains and leg irons" for the whole recreation period "unless we [were] taking a shower."  *Id*. at 4, 5.

Alston claims the warden, assistant warden, and chief of security are responsible for these alleged constitutional violations.  He insists that, based on their positions, these defendants were "responsible for ensuring [his] safety and well being . . . ."  *Id.* at 1, 7. He states that he filed grievances through the administrative remedy procedures available through the Department of Public Safety and Correctional Services (DPSCS), but his concerns were not addressed.  ECF 8.

## II. Standard of Review

This Court screens pretrial detainee complaints against governmental entities and their officers and employees and must dismiss any complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B)(i)–(ii) (requiring dismissal of claims by litigants proceeding in forma pauperis if the claims are frivolous, malicious, or fail to state a claim on which relief may be granted).  "The district court need not look beyond the complaint's allegations . . . .  It must, however, hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally." *See White v. White,* 886 F.2d 721, 722–23 (4th Cir. 1989).  But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only

"determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)).  Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

### III.   Failure to State a Claim

Under Section 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009).  Two elements are essential to state a claim under § 1983: (1) the plaintiff must have suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation must have been committed by a person acting under color of law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

The defendant's own action—or failure to act—is required for liability under § 1983.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).  There is no *respondeat superior* liability under § 1983.  *Love-Lane*, 355 F.3d at 782.  Officials like defendants may be found liable only if the plaintiff shows the official "acted

personally in the deprivation of the plaintiff['s] rights." *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)).

To state a claim for supervisor liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff" (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Alston alleges generally that the warden, assistant warden, and chief of security are responsible for addressing his concerns about the conditions of his confinement because they are in positions of power within the institution. However, he does not allege that any of the defendants were personally involved in the alleged deprivations that took place. Nor has he alleged facts to support a theory of supervisory liability. Further, he has not specified what injury, if any, he experienced because of the conditions of his confinement. Accordingly, his claims against these defendants are dismissed without prejudice.

As to Alston's claims that his religious rights were violated, he has failed to identify how the chaplain deprived him of his rights. He states that he experienced discrimination based on his religion, but he does not describe what the chaplain did that amounted to discrimination. He states that he could not practice his religion and access a religious advisor, but he does not state how the chaplain prevented him from doing those things. Because Alston has not alleged that the chaplain

personally deprived him of his right to freely practice his religion, Alston's claims against him are dismissed without prejudice.

As for the unnamed correctional officers, Alston states his toilet was leaking and making his cell unsanitary, and he asked the officers to put his leaking toilet on a list to be repaired. Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment in violation of the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To state an Eighth Amendment claim under § 1983 based on conditions of confinement, a prisoner must allege "two elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.)) (internal alterations omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). To show that the conditions amount to "extreme deprivation[ ]," the prisoner "must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (quoting *Strickler*, 989 F.2d at 1381; citing *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993)).

Even if Alston had alleged the correctional officers did not put his toilet on the repair list, which he has not, a mere failure to have a toilet repaired is not an extreme deprivation of basic

human needs.  Alston does not allege that the leak caused a serious injury or put him at risk of a serious injury.  Nor does he allege the correctional officers knew that a leaking toilet caused serious injury or put him at risk of serious injury.  His claim against unidentified correctional officers for failing to have a leaking toilet fixed is dismissed without prejudice.

Accordingly, it is this 30th day of August, 2023, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Alston's Motion to Proceed in Forma Pauperis (ECF 2) IS GRANTED.

2. Alston's claims against the defendants warden, assistant warden, chief of security, and chaplain ARE DISMISSED without prejudice.

3. The Complaint IS DISMISSED without prejudice.

4. The Clerk SHALL CLOSE this case and shall send a copy of this order to Alston.

Deborah L. Boardman
United States District Judge